UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANGELEA H. MCDONALD,

    Plaintiff,

v.                                                                             CASE NO. 3:16-cv-1414-J-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

## **MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for a period of disability and disability insurance benefits ("DIB"), alleging disability beginning January 15, 2009. (Tr. 12.) A hearing was held before the assigned Administrative Law Judge ("ALJ") on February 20, 2015, at which Plaintiff was represented by counsel. (Tr. 26-58.) The ALJ found Plaintiff not disabled from January 15, 2009 through December 31, 2013, her date last insured.[2] (Tr. 12-21.)

In reaching the decision, the ALJ found that Plaintiff had "the following severe impairments: cervical disc disease, lumbar disc disease, chronic obstructive pulmonary disease (COPD), bipolar disorder, posttraumatic stress

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 12, 14.)

[2] Plaintiff had to establish disability on or before December 31, 2013, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 12.)

disorder (PTSD), syncope and gastroesophageal reflux disease." (Tr. 14.) The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work. (Tr. 16.) Ultimately, the ALJ found that through the date last insured, Plaintiff was capable of performing her past relevant work of an administrative clerk as actually and generally performed. (Tr. 21.)

Plaintiff is appealing the Commissioner's decision that she was not disabled from January 15, 2009 through December 31, 2013. Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The Court has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the Commissioner's decision is **AFFIRMED**.

I.  **Standard**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary

result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

Plaintiff raises three issues on appeal. First, she argues that the ALJ did not explain the weight assigned to Dr. Dennis Dewey's treating opinions or provide good cause for not crediting these opinions.[3] Further, Plaintiff argues that the ALJ erred by failing to include the opinions of the State agency psychologists, Lawrence Annis, Ph.D. and Lee Reback, Psy.D., in the RFC assessment, despite assigning these opinions significant weight. Finally, Plaintiff argues that the ALJ erred by failing to address Dr. William Sessions' opinions that Plaintiff was unable to work due to her physical and mental impairments.

Defendant responds that any error in the ALJ's consideration of Dr. Dewey's opinions was harmless because the past relevant work identified by the

---

[3] Dr. Dewey opined that Plaintiff would require a sit/stand option at will, would not be able to stand or walk for an extended period of time, and would not be able to perform frequent bending or lifting.

3

ALJ included all of the limitations in Dr. Dewey's opinions.  Defendant further argues that any error in the ALJ's consideration of the State agency psychologists' opinions was also harmless.  Defendant explains that the findings of moderate limitations are not part of the actual mental RFC, because the actual mental RFC assessment is recorded in the narrative discussions, which describe how the evidence supports each conclusion.  In the narrative discussions, Dr. Annis and Dr. Reback stated that Plaintiff may occasionally experience some decrease in concentration and may have some difficulty adapting to change; according to Defendant, these are not definitive opinions about Plaintiff's limitations.  Also, even assuming that the ALJ's RFC assessment, which provided that Plaintiff would be off task up to 10% of the workday, did not fully account for the State agency psychologists' opinions that Plaintiff should not perform fast paced or quota driven work, Defendant argues that any error is harmless because the past relevant work, as actually performed, was neither fast paced nor quota driven.  Finally, Defendant argues that any error in the ALJ's consideration of Dr. Sessions' opinions was harmless because aside from the fact that these opinions were on issues reserved to the Commissioner, even if they were credited, they would not establish that Plaintiff had disabling limitations for any consecutive twelve-month period before the date last insured.

### A. Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making

4

a disability determination. *See* 20 C.F.R. § 404.1520(a)(3). With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6). "However, the ALJ is not required to explicitly address each of those factors. Rather, the ALJ must provide 'good cause' for rejecting a treating physician's medical opinions." *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. June 22, 2011) (per curiam).

5

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam); 20 C.F.R. § 404.1527(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008). Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. May 2, 2008) (per curiam); *see also* SSR 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources). While the ALJ is not bound by the findings of non-examining physicians, the ALJ may not ignore these opinions and must explain the weight given to them in his decision. SSR 96-6p.

### B. The ALJ's Decision

The ALJ found that Plaintiff had the RFC to perform light exertional work except:

> [The claimant] can occasionally reach overhead and occasionally
> climb ramps and stairs. The claimant can never crawl and she
> cannot work around unprotected heights, moving mechanical parts
> or have any concentrated exposure to humidity, wetness, dust,
> fumes or gases. She cannot work in any environments with
> temperature extremes. The claimant will be off task up to 10% of the
> workday.

(Tr. 16.) In making this finding, the ALJ considered Plaintiff's statements, the objective medical evidence, and the opinions of treating, examining, and non-examining sources. (*See* Tr. 16-20.)

> The ALJ addressed Dr. Dewey's opinions as follows:
>
> Dennis D. Dewey, MD examined the claimant in November 2011 for
> her reported low back pain. She said that her pain was in the right
> lumbosacral area that radiated, at times, into the posterior thigh and
> lower leg. She stated that her pain was increased with bending
> forward and lifting. On physical examination she appeared quite
> anxious and tearful, she had decreased range of motion in her
> lumbar spine and she ambulated bent forward as she was unable to
> straighten without significant back pain. The claimant had an MRI of
> her lumbar spine in January 2012 that showed L4-5 mild to moderate
> central canal and bilateral neural foraminal narrowings with bilateral
> L4 nerve root abutment and possible right L4 nerve root mild
> impingement and L5-S1 bilateral moderate to marked neural
> foraminal stenosis with bilateral L5 nerve root compressions (Exhibit
> 3F).
> . . .
> The claimant returned to see Dr. Dewey in February 2012. He said
> the claimant would benefit from a neurosurgical consultation and/or
> long-term pain management with injection type treatments. With
> regards to her occupational functioning, he opined that she would be
> best suited for a job that would allow her to sit and stand at will and
> would not require her to stand or walk for any extended period of
> time or require any frequent bending or lifting (Exhibit 3F).

(Tr. 18-19.)

The ALJ then determined that Plaintiff's statements regarding her symptoms were not entirely credible. (Tr. 19.) With respect to Plaintiff's physical impairments, the ALJ stated:

> [T]hese conditions are not as severe as she has alleged. She has had very little treatment for such allegedly disabling conditions and has not required any hospitalizations for her cervical disc disease, lumbar disc disease, COPD or GERD. She was hospitalized for a single episode of syncope in 2011, however, she has not required any further emergent treatment for this condition (Exhibit 1F). Additionally, William H. Sessions, MD said, in March 2012, that the claimant had no point tenderness in her back, she had adequate range of motion and her reflexes were adequate (Exhibit 4F/2). Furthermore, a physical examination of the claimant in September 2013 indicated that she had pain with range of motion in her back, otherwise the examination was unremarkable. She was instructed in performing Tai Chi exercises and told to perform stretching exercises before getting out of bed (Exhibit 9F, 11F). In December 2013, she had decreased range of motion in her back but no tenderness and her straight leg raise testing was normal (Exhibits 10F, 11F). The claimant's subjective complaints far exceed the findings on the physical examinations noted above (see Exhibit 3E). The claimant's physical impairments are not disabling, however she has some limitations because of them that were considered when crafting the [RFC] assessed herein.

(*Id.*)

As to Plaintiff's mental impairments, the ALJ also found them not as severe as alleged. (Tr. 20.) He explained:

> For example, Dr. Knox said the claimant's response style might indicate a broad tendency to magnify the level of experienced illness or a characterological inclination to complain or to be self-pitying (Exhibit 2F). Additionally, she told Dr. Sessions, in September 2013, that she had chronic anxiety but she tried to stay upbeat and as personable as possible, indicating a good ability to understand and man[a]ge her mental health symptoms without the need for regular

8

mental health treatment (Exhibit 9F).

(*Id.*)

The ALJ also addressed the opinions of the State agency non-examining consultants:

> Physicians contracted for by the State Agency reviewed the evidence and offered their expert opinion that despite the claimants [sic] medically determined impairments she retained the physical ability to perform the exertional demands of at least light work as that term is defined in the regulations and that her psychiatric problems did not cause more than a "moderate" functional limitation (Exhibits 1A, 3A). The opinions of these reviewing doctors have been carefully reviewed and their "expert opinion evidence" has been considered in accordance with SSR 96-6p. In this instance, these opinions are given significant weight for several reasons. First, these are disability specialists who had the bulk of the evidence from the treating sources and consultative examiners that now comprise the official record in this case available for their review and they considered all of the objective facts at the time they rendered their opinion. Secondly, though they did not have at their disposal the claimant's testimony, that testimony specifically as it relates to the claimant's activities of daily living, was consistent with the [RFC] opined by the reviewing doctors to a significant degree. Finally, the evidence in total does support in general the conclusions put forth by the State Agency doctors. The evidence is part of the record and entitled to the same probative value accorded "expert opinion" evidence.

(*Id.*)

The ALJ concluded that Plaintiff was not disabled because she was capable of performing her past relevant work as an administrative clerk, as actually and generally performed. (Tr. 21.) The ALJ determined that this work, which, as actually performed, was sedentary, semi-skilled with an SVP of 4, did

not require the performance of work-related activities precluded by Plaintiff's RFC. (*Id.*)

The ALJ based this determination on the testimony of Plaintiff and the Vocational Expert ("VE"). Plaintiff testified that her past relevant work was secretarial (answering the phone, billing, receiving, and taking checks to the bank), she worked from home and at her own speed, she was sitting most of the day, she could lay down when needed, and she did not do much lifting and carrying. (Tr. 36-38.) The VE testified that the job of an administrative clerk was light, semi-skilled, with an SVP of 4, and was performed by Plaintiff at the sedentary level. (Tr. 56.)

### C. Relevant Opinion Evidence

#### 1. Treating Sources

##### a. Dr. Sessions

Dr. Sessions treated Plaintiff since September 2010 for syncope, anxiety, depression, chronic low back pain, hypertension, and COPD. (*See, e.g.*, Tr. 227-41, 278-79, 290-93, 296-97, 299-302.) On March 13, 2012, Dr. Sessions wrote:

> I sent her to psychiatry and neurology. She has had an MRI of the back and has bulging disk. Stretching exercises are shown for the low back. She has no point tenderness. Range of motion is adequate. Reflexes are adequate. I will see her back in 6 months.

(Tr. 268.)

On September 3, 2013, Dr. Sessions advised Plaintiff to do stretching

exercises before getting out of bed and told her that she had to wean herself off the narcotic pain medication, which he would replace with Tramadol. (Tr. 297.) Dr. Sessions noted that Plaintiff was "[c]hronically disabled for employment due to spinal stenosis and bipolar depression." (Tr. 300.) On December 3, 2013, Dr. Sessions stated that Plaintiff's chronic back pain limited her activity and she was "disabled from working." (Tr. 301, 302 ("Disabled for employment.").)

### b. Dr. Dewey

Dr. Dewey, a Board certified neurologist, treated Plaintiff since November 2011 for chronic low back pain. (Tr. 256, 260-62.) On February 23, 2012, Dr. Dewey stated:

> Patient would benefit from a neurosurgical consult and if not a neurosurgical candidate then long-term pain management possibly with injection type treatments. As far as jobs are concerned she would be best suited by being in a job that would allow her to sit and stand at will and would not require her to stand or walk for any extended period of time or require any frequent bending or lifting.

(Tr. 256.)

### 2. State Agency Non-Examining Consultants

### a. Dr. Annis

In a Psychiatric Review Technique ("PRT"), completed on January 2, 2013, Lawrence Annis, Ph.D., opined, *inter alia*, that Plaintiff had moderate difficulties in maintaining concentration, persistence or pace. (Tr. 63.) Dr. Annis stated:

> Alleged mental limitations performing work are considered credible. Account of [activities of daily living] and objective evidence indicate

mild to moderate overall functional impairment due to mental condition, but [claimant] remains mentally able to perform range of occupational tasks in settings which are not fast paced or quota driven.

(Tr. 64.)

In a Mental RFC Assessment completed the same day, Dr. Annis opined that Plaintiff was moderately limited in the ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and to respond appropriately to changes in the work setting. (Tr. 67-68.) With respect to Plaintiff's attention and concentration, Dr. Annis explained in narrative form:

> [Claimant] should be mentally able to sustain concentration and persist at range of routine occupational tasks within physical tolerances and skill levels for at least two hours at a time through an 8-hour workday. Additional supervision may be required when working on new and multi-step assignments. There may be occasions during which [claimant] experiences some decrease in concentration, but she can attend to and complete range of routine tasks as needed. [Claimant] is mentally able to understand and follow a schedule.

(Tr. 67.) As to Plaintiff's adaptation limitations, Dr. Annis explained: "[Claimant] may have some difficulty adapting to change but will be able to function within a stable work assignment. [Claimant] should be better able to adapt to changes after an initial employment period." (Tr. 68.) Under Additional Explanation, Dr.

12

Annis stated, in part: "[Claimant] should be mentally able to perform range of routine occupational tasks in settings which are not fast paced or quota driven. Functional restrictions beyond levels assessed above are not considered attributable to [claimant's] mental condition[.]" (*Id.*)

### b. Dr. Reback

In a PRT, completed on May 23, 2013, Lee Reback, Psy.D., P.A., opined, *inter alia*, that Plaintiff had moderate difficulties in maintaining concentration, persistence or pace. (Tr. 75.) Dr. Reback stated:

> Alleged mental limitations performing work are considered credible. Account of [activities of daily living] and objective evidence indicate mild to moderate overall functional impairment due to mental condition, but the claimant remains mentally able to perform range of occupational tasks in settings which are not fast paced or quota driven.

(Tr. 76.)

In a Mental RFC Assessment completed the same day, Dr. Reback opined that Plaintiff was moderately limited in the ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and to respond appropriately to changes in the work setting. (Tr. 80-81.) With respect to Plaintiff's attention and concentration, Dr. Reback explained in narrative form:

13

> The claimant should be mentally able to sustain concentration and persist at range of routine occupational tasks within physical tolerances and skill levels for at least two hours at a time through an 8-hour workday. Additional supervision may be required when working on new and multi-step assignments. There may be occasions during which the claimant experiences some decrease in concentration, but she can attend to and complete range of routine tasks as needed. The claimant is mentally able to understand and follow a schedule.

(Tr. 81.)

As to Plaintiff's adaptation limitations, Dr. Reback explained: "The claimant may have some difficulty adapting to change but will be able to function within a stable work assignment. The claimant should be better able to adapt to changes after an initial employment period." (*Id.*) Under Additional Explanation, Dr. Reback stated, in part: "The claimant should be mentally able to perform range of routine occupational tasks in settings which are not fast paced or quota driven. Functional restrictions beyond levels assessed above are not considered attributable to the claimant's mental condition[.]" (Tr. 81-82.)

### D. Analysis

As to the first issue, the Court agrees with Defendant that any error in the ALJ's consideration of Dr. Dewey's opinions was harmless given that the past relevant work that Plaintiff was found capable of performing, included the limitations in Dr. Dewey's opinions. Dr. Dewey opined that Plaintiff "would be best suited by being in a job that would allow her to sit and stand at will and would not require her to stand or walk for any extended period of time or require

14

any frequent bending or lifting." (Tr. 256.) The ALJ did not seem to account for such limitations in the RFC assessment. (*See* Tr. 16.) However, the past relevant work that Plaintiff was found capable of performing, was not inconsistent with Dr. Dewey's limitations. The work of an administrative clerk, as Plaintiff performed it, was sedentary, and Plaintiff testified that she was sitting most of the day, could lay down when needed, and did not involve much lifting and carrying. (Tr. 36-38, 56.) Therefore, the Court finds no reversible error in the ALJ's consideration of Dr. Dewey's opinions. (*See* Tr. 18-19.)

Further, the Court agrees with Defendant that any error in the ALJ's consideration of Dr. Sessions' opinions was also harmless. Plaintiff argues that the ALJ erred by failing to address Dr. Sessions' opinions that Plaintiff was unable to work due to her physical and mental impairments. Although Dr. Sessions opined on September 3, 2013 that Plaintiff was "[c]hronically disabled for employment due to spinal stenosis and bipolar depression" (Tr. 300), and on December 3, 2013 that Plaintiff was disabled for employment (Tr. 301-02), the ALJ did not need to accept these opinions because they were on issues reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d); SSR 96-5p (rescinded by Federal Register Notice Vol. 82, No. 57, pg. 15263, effective Mar. 27, 2017[4]).

Of note, the ALJ addressed the physical examination findings from the September 3, 2013 visit and the December 3, 2013 visit, which were generally

---

[4] The ALJ issued his decision on April 30, 2015. (Tr. 21.)

15

unremarkable and Plaintiff was advised to perform stretching exercises. (Tr. 19 ("[A] physical examination of the claimant in September 2013 indicated that she had pain with range of motion in her back, otherwise the examination was unremarkable. She was instructed in performing Tai Chi exercises and told to perform stretching exercises before getting out of bed (Exhibit 9F, 11F). In December 2013, she had decreased range of motion in her back but no tenderness and her straight leg raise testing was normal (Exhibits 10F, 11F). The claimant's subjective complaints far exceed the findings on the physical examinations noted above . . . ."); Tr. 296-97 (noting increasingly worse low back pain, but advising Plaintiff that she would no longer receive narcotic medication); Tr. 301-02 (noting decreased range of motion in the back, but no tenderness, negative straight leg raising, good range of motion in the hips, and no clubbing or edema of the extremities).) As the ALJ noted, these examination findings were not inconsistent with Dr. Sessions' earlier examination in March of 2012, when he noted that Plaintiff had no point tenderness in her back, had adequate range of motion, and her reflexes were adequate. (Tr. 19, 268.) In addressing these generally unremarkable examination findings, the ALJ implicitly discounted Dr. Sessions' opinions from these visits that Plaintiff was disabled for employment. It should be noted that while Dr. Sessions opined that Plaintiff was disabled, during the same visits, he was advising her to do stretching exercises and wean herself off the narcotic pain medication. (Tr. 297.)

In addition, as Defendant points out, even if Dr. Sessions' opinions that Plaintiff was disabled were credited, they would not establish that Plaintiff had disabling limitations for any consecutive twelve-month period before her date last insured. Dr. Sessions rendered such opinions only in September and December of 2013, not at any previous visits. Therefore, based on the foregoing, the Court finds no reversible error in the ALJ's consideration of Dr. Sessions' opinions. *See Tillman v. Comm'r, Soc. Sec. Admin.*, 559 F. App'x 975, 975-76 (11th Cir. Apr. 4, 2014) (per curiam) (holding that the ALJ's failure to explicitly assign weight to two doctors' opinions on matters reserved to the Commissioner was not error where the doctors' records and other evidence contradicted the doctors' opinions); *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. Feb. 8, 2013) (per curiam) ("We have also declined to remand for express findings when doing so would be a 'wasteful corrective exercise' in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision.").

Plaintiff also argues that the ALJ erred by failing to include the opinions of Dr. Annis and Dr. Reback in the RFC assessment, despite assigning these opinions significant weight. The Court does not find any reversible error. The ALJ's RFC assessment provided, in relevant part, that Plaintiff would be off task up to 10% of the workday. (Tr. 16.) In arriving at the RFC, the ALJ considered the opinions of Dr. Annis and Dr. Reback and determined that they were entitled to significant weight. (Tr. 20.) Plaintiff argues that by finding that she would be

17

off task up to 10% of the workday, the ALJ failed to incorporate certain moderate limitations, adaptation limitations, limitations to routine or unskilled work, limitations regarding the need for special supervision if faced with multi-step or new assignments, or the need to avoid fast-paced work, from the opinions of Dr. Annis and Dr. Reback.

First, to the extent Dr. Annis and Dr. Reback opined that Plaintiff had certain moderate limitations, these opinions were not part of the actual Mental RFC Assessments. The Mental RFC Assessment form provides that "the actual mental residual functional capacity assessment is recorded in the narrative discussion(s)." (Tr. 80.) In the narrative discussions, Dr. Annis and Dr. Reback opined as follows:

> [Claimant] should be mentally able to sustain concentration and persist at range of routine occupational tasks within physical tolerances and skill levels for at least two hours at a time through an 8-hour workday. Additional supervision may be required when working on new and multi-step assignments. There may be occasions during which [claimant] experiences some decrease in concentration, but she can attend to and complete range of routine tasks as needed. [Claimant] is mentally able to understand and follow a schedule.
> . . .
> [Claimant] may have some difficulty adapting to change but will be able to function within a stable work assignment. [Claimant] should be better able to adapt to changes after an initial employment period.

(Tr. 67-68; *see also* Tr. 81 (same).)

The State agency doctors stated that Plaintiff *may* occasionally experience some decrease in concentration and *may* have some difficulty in adapting to

18

change, but, as Defendant points out, these are not definitive opinions and they are not necessarily inconsistent with the RFC. *See Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 832 (11th Cir. June 16, 2011) (per curiam) ("Where a treating physician expresses uncertainty as to his own medical findings, the ALJ has no obligation to defer to his opinion.").

Dr. Annis and Dr. Reback also opined that Plaintiff "should be mentally able to perform [a] range of routine occupational tasks in settings which are not fast paced or quota driven." (Tr. 68, 81-82.) Even assuming that the ALJ's RFC that Plaintiff would be off task up to 10% of the workday did not account for this opinion, any error would be harmless because the past relevant work that the ALJ found Plaintiff capable of performing was neither fast paced nor quota driven as performed. (*See* Tr. 37-38.) Based on the foregoing, the Commissioner's decision is due to be affirmed.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **AFFIRMED**.

2. The Clerk of Court is directed to enter judgment consistent with this Order and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on February 21, 2018.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record